**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
GAINESVILLE DIVISION**

TEOFILO MENDEZ-LYNCH,

:
:
:
:
:

Petitioner,

:
:

CIVIL ACTION NO.
2:08-CV-0008-RWS

v.

:
:
:

CATHLEEN PIZZUTELLO
(p/k/a/ Cathleen Mendez-Lynch),

:
:
:
:

Respondent.

:
:

**ORDER**

Pending before the Court is a petition filed by Petitioner Teofilo Mendez-Lynch ("Petitioner") under The Hague Convention on the Civil Aspects of International Child Abduction ("The Hague Convention") and the International Child Abduction Remedies Act ("ICARA"), 42 U.S.C. § 11601, et seq, for the return of his two minor sons to Argentina. On February 11, 2008, the Court held an evidentiary hearing on this matter and heard from both Petitioner and Respondent Cathleen Pizzutello ("Respondent"). The children gave testimony before the Court in chambers. Based upon the testimony heard by the Court, the

exhibits entered into evidence, and the Court's review of all the applicable law, the Court enters the following Order.

Petitioner and Respondent were previously married and had two children–"D.M.L." and "B.M.L." ("the children")--now ages fourteen and twelve, respectively.  Petitioner and Respondent subsequently separated in Argentina in 1999.  Petitioner is the father of D.M.L. and B.M.L., and Respondent is their mother.

In January 2000, while Petitioner was out of Argentina, Respondent removed the children from Argentina and brought them to the United States.  She did not reveal to Petitioner where she and the children were living.  When Petitioner located his family in Florida, he came to the United States to see his children.  While Petitioner was in Florida, Respondent had him served with papers in a divorce proceeding she had filed in Florida.  A default was subsequently entered in that proceeding when Petitioner failed to file an answer.  A final divorce decree was entered May 15, 2001 giving primary custody of the children to Respondent with supervised visitation to Petitioner. The judgment was without prejudice to Petitioner's rights under the Hague Convention.  On June 29, 2001, Petitioner filed a Hague Convention Petition in the Middle

District of Florida.  On August 13, 2002, the Court granted the Petition and ordered that the children be surrendered to Petitioner to be returned to Argentina.  See Mendez Lynch v. Mendez Lynch, 220 F. Supp. 2d 1347 (M.D. Fla. 2002).  The entire family returned to Argentina.

On December 19, 2003, Petitioner and Respondent agreed that the children would live with Respondent and that Petitioner would have liberal visitation rights.  Subsequently, Respondent requested permission from the Argentine Family Court to travel abroad with the children.  In 2005, the Argentine court gave Respondent approval to travel for a one-month window of time beginning on July 1, 2005.  On or around July 31, 2005, just as her approved window for travel abroad was about to expire, Respondent left Argentina with the children and traveled to the United States.  Respondent sought an extension of this travel window, which the family court denied.  On September 16, 2005, the family tribunal ordered Respondent to appear with the children in 72 hours.  However, she and the children remained in the United States.

Since that time, Petitioner has been searching for his children. In January of 2008, his search led him to Blue Ridge, Georgia.  He traveled there at his

3

AO 72A
(Rev.8/82)

own expense to further investigate.  During the week of January 7, 2008, Petitioner discovered the children enrolled in public schools in Ellijay, Georgia.  On January 18, 2008, Petitioner filed the present Hague Convention petition seeking the return of his children to Argentina.

## II. Discussion

### A. The Hague Convention

The Hague Convention on the Civil Aspects of International Child Abduction was implemented in the United States in 1988 as the International Child Abduction Remedies Act.  The Hague Convention was created with the stated purpose "to protect children internationally from the harmful effects of their wrongful removal or retention and to establish procedures to ensure their prompt return to the State of their habitual residence."  Hague Convention, Preamble.  "The goal of the Hague Convention is to restore the *status quo ante* and to deter parents from forum-shopping internationally to resolve custody disputes in a more sympathetic court."  Giampaolo v. Erneta, 390 F.Supp.2d 1269, 1275 (N.D. Ga. 2004); Lops v. Lops, 140 F.3d 927, 936 (11th Cir. 1998).  The United States and Argentina, as signatories to the Hague Convention, are "Contracting States" under the terms of the treaty.

4

Pursuant to Article 19 of the Hague Convention and ICARA, 42 § 11601(b)(4), the Court's role in applying the Hague Convention is not to resolve the merits of a custody dispute.  Rather, the Court is to determine the narrow issue of whether the children were removed or retained wrongfully from their habitual residence.  See Giampaolo, 390 F.Supp.2d at 1275-76.

The removal or retention of a child is wrongful under the Hague Convention when :

> (a) it is in breach of rights of custody attributed to a person, an institution or any other body, either jointly or alone, under the law of the State in which the child was habitually resident immediately before the removal or retention, and
>
> (b) at the time of removal or retention those rights were actually exercised, either jointly or alone, or would have been so exercised but for the removal or retention.

Hague Convention, Art. 3.

5

The parent seeking the return of the child bears the burden to establish wrongful removal or retention by a preponderance of the evidence. 42 U.S.C. § 11603(e)(1)(A). If the petitioner meets this burden, then the burden shifts to the parent opposing the child's return to establish the applicability of one of the exceptions or affirmative defenses provided in Articles 12, 13, or 20 of the Hague Convention. 42 U.S.C. §11603(e)(2)(A), (B). Unless the respondent is successful in establishing one of these affirmative defenses, the court must order the return of the child to his or her country of habitual residence.

### B. Petitioner's Prima Facie Case

To establish a prima facie case under the Hague Convention and the ICARA, the petitioner must establish the following four elements: (1) the habitual residence of the child immediately before the date of the alleged wrongful removal or retention was in a foreign country; (2) the removal or retention was in breach of custody rights under the foreign country's law; (3) the petitioner was exercising custody rights at the time of the alleged wrongful retention; and (4) the child has not yet attained the age of sixteen years. 42 U.S.C. § 11601(a)(4). Respondent conceded in her brief that Petitioner has met

6

elements (1) and (4) but disputed that he had done so on elements (2) and (3).[1]

With regard to the second element, the Court concludes that the removal or retention did breach Petitioner's custody rights under the law of the child's habitual residence–Argentina. While *physical* custody had been transferred to Respondent under the terms of the parties' custody agreement, Petitioner retained legal rights with regard to his children that qualify as "rights of custody" under the Hague Convention and Argentine law. See Giampaolo, 390 F.Supp.2d at 1278-80 (noting that under Argentine law, a father retains "rights of custody" even if he only has minimal visitation rights under the custody agreement and that an affirmative action by a judicial authority is needed in order to terminate parental rights).[2] Therefore, Petitioner has met his burden on this element.

---

[1]For purposes of the February 11 hearing, Respondent did not dispute elements (2) and (3). However, because she did challenge those elements in her pleadings, the Court addresses them herein.

[2]In Giampaolo, as here, the respondent removed the children from the country while she had permission to travel outside the country. For this reason, the removal of the child was not technically in violation of the petitioner's rights in that case. However, the Giamaolo Court concluded, and this Court agrees, that the father's permission is needed in order to authorize a change in the place where his child resides. Thus, the Giapaolo petitioner's "rights of custody" were violated just as Petitioner's rights here were violated when the children were removed from the country. See Giampaolo, 390 F.Supp.2d at 1278-80

7

With regard to the third element, the Court concludes that the petitioner was exercising his custody rights at the time of the alleged wrongful retention. In the months and years leading up to the children's removal from Argentina, Petitioner had been visiting his children under the parties' custody agreement. Therefore, Petitioner has met his burden on this element.

### C. Respondent's Affirmative Defenses

The Court now turns to Respondent's affirmative defenses. Respondent raised three affirmative defenses: the "well-settled" exception, the exception for grave risk of exposure to physical or psychological harm, and the wishes of the children.

First, Respondent argues that the "well-settled" exception should apply. The general rule is that a court shall order the return of a wrongfully-removed or retained child unless more than a year has elapsed between the date of the child's wrongful removal or retention and the date that the proceedings were commenced and the child has become well-settled in his or her new environment. Hague Convention, Art. 12. Here, the Petition was filed over two years after the children left Argentina with Respondent. However, equitable tolling of the one-year period applies. See Furnes v. Reeves, 362 F.3d 702, 723

8

(11th Cir. 2004) (holding that courts have discretion to apply equitable tolling where a child's location has been concealed). Here, there is sufficient evidence showing that Respondent concealed the location of the children to justify a tolling of the one-year period until Petitioner discovered his children in Georgia a few weeks ago. For these reasons, this affirmative defense must fail.[3]

Second, Respondent argues that the Court should refuse to return the children to Argentina because they would face a grave risk of exposure to physical or psychological harm. At the hearing, the Court expressed concern that harm might come to the children if they were ordered to return to Argentina because they are opposed to returning. The parties apparently concluded that the children had expressed an intent to harm themselves if ordered to return. This was not the case. The Court's statement arose out of concern about what might befall the children during any efforts they might undertake to avoid being

---

[3] Even assuming *arguendo* that the one-year period should not be tolled, Respondent failed to provide sufficient evidence that the children are well-settled in Ellijay, Georgia. They began their journey in Fort Myers, Florida for several months before moving to Georgia in the Spring of 2006. They started the 2006-2007 school year in public school, but then they moved to home-schooling before the first semester had concluded. Currently, they are enrolled in public school again. Furthermore, Respondent does not appear to have a consistent source of income, and she is living with the children in a friend's house. They pay no rent to live in the house, and the friend has the house listed on the market.

9

returned to Argentina. While the Court still has this concern, the Court finds that it would be inappropriate to allow a process that Congress has established to address the difficult issues raised by this Petition to be manipulated by the threats of affected children. The Court will comply with its obligations under the law and must trust the parents (who should have the children as their primary concern) to carry out the Court's Order in a way that best assures the care and safety of the children.[4]

This affirmative defense is intended to focus on harm that might befall the children from others if they were ordered to be returned. Not only has Respondent failed to establish the level of physical and emotional abuse that would require a denial of the Petition for the sake of the children's protection, but the Court will order that the return of the children occur in a manner that

---

[4] The Court has made every effort to facilitate a peaceful resolution to this conflict. The Court encouraged the use of the children's counselor to assist in reuniting the children with their father. Also, the Court endeavored to make guardians-ad-litem available for the children during this proceeding. Immediately before the February 11 hearing, the Court met with the parents in one final effort to try to find a resolution of this matter that would serve the best interests of the children and the parents. However, despite these efforts, these parties have been unable to set aside their issues and come to any agreement. Because this Court recognizes that its role is not to determine the custodial issues raised by the parties, the Court finds that it is in the best interests of the children and the parents to get this matter before the proper tribunal for resolution of these issues as soon as possible.

10

assures their protection until the appropriate court in Argentina can address these issues. Based upon the evidence presented at the hearing, this Court is satisfied that the courts in Argentina take seriously any acts of family violence. Argentina is the proper jurisdiction under the Hague Convention to resolve these issues.

Finally, Respondent argues that the children's wishes should be respected and that they are mature enough to choose to stay in the United States. Both children adamantly stated their opposition to returning to Argentina. They like the Gilmer County community and the schools they are attending. The Court recognizes that being uprooted from this community is distressing to the children. While the Court is sympathetic with their feelings, the Court finds that their desires do not override their father's rights.

C. Conclusion

For the reasons stated herein, the Court hereby **GRANTS** the Petition to return the children to Argentina subject to the following restrictions. Respondent shall surrender the children to Petitioner not later than twelve noon

11

AO 72A
(Rev.8/82)

on February 16, 2008.[5]  Counsel for Petitioner shall coordinate arrangements for the transfer with counsel for Respondent.  The children shall be returned to Argentina at Petitioner's expense.  If Respondent wishes to return to Argentina with the children, Petitioner shall pay her expenses for travel.  Because the custody order obtained by Petitioner in the Argentine courts in January 2007 was limited to granting him "temporary custody of the minors, for the purposes of restoring their contact with him and return them to their country of residence," this Order does not address the circumstances of the children's custody once they return to Argentina.[6]  Petitioner shall provide Respondent with a residence in Argentina where she and the children may remain until the appropriate court in that jurisdiction makes a final determination regarding custody and visitation.  Petitioner is also **ORDERED** to pay to Dr. Gary Tomblin the sum of $500.00 for services rendered in connection with

---

[5]Although Respondent is required to surrender the children to Petitioner, the Court does not require that the children leave the Respondent's presence.  Respondent may comply with her obligation by presenting the children to Petitioner at the airport for departure to Argentina and remaining with them on the flight.

[6]The Court does not have jurisdiction to decide the issue of custody, but, in light of the concerns raised by the children in their interviews with the Court, the Court urges the parties to allow the children to remain in the actual physical custody of Respondent upon the return to Argentina until the proper court in Argentina can address this issue.

12

Petitioner's visitation in Georgia.[7]  This sum must be paid before Petitioner and the children depart the United States.  Except as otherwise provided herein, each party shall bear his/her own costs in this proceeding.

      **SO ORDERED**, this   13th   day of February, 2008.

*[signature]*

RICHARD W. STORY
UNITED STATES DISTRICT JUDGE

---

[7] This sum represents the father's share of the counselor's charges.  The balance of the charges should be billed to Medicaid as the cost for counseling to the children.  To the extent that the balance is not paid by Medicaid, Respondent shall be responsible for such balance.

13

AO 72A
(Rev.8/82)